# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RONNIE ROBBINS, AND ALL OTHERS SIMILARLY SITUATED UNDER 29 U.S.C. 216(B) | § § § § § | |
| v. | § § § | CIVIL ACTION NO. 3:16-CV-0793-S |
| XTO ENERGY, INC. (a/k/a EXXONMOBIL) | § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant XTO Energy Inc.'s ("XTO") Motion to Dismiss Plaintiff's Overbroad Class Definition and Related Class Allegations [ECF No. 47]. For the reasons set forth below, the Court grants the motion.

### I. BACKGROUND

On December 27, 2016, Plaintiff Ronnie Robbins ("Robbins") filed a collective action against XTO (the "Amended Complaint"), alleging it failed to pay him and other similarly situated employees overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206-207, 215(a)(2). In the Amended Complaint, Robbins alleged he was responsible for inspecting and operating well equipment and performing other routine duties. Am. Compl. ¶ 13. He defined the proposed class as current and former frontline oilfield workers, including lease operators, automation technicians, and other production-side workers. *Id.* ¶ 3. Robbins claims that XTO classified Robbins and similarly situated employees as non-exempt, overtime eligible employees, yet failed to pay them overtime when they worked more than 40 hours per week. *Id.* ¶¶ 14-15.

XTO moved to dismiss the Amended Complaint. On July 28, 2017, the Court granted XTO's motion and afforded Robbins the opportunity to replead. *See* Order 4 (the "Lynn Order"). The issues identified in the Lynn Order were: 1) failure to cite the date range worked or when the FLSA violations allegedly occurred; 2) failure to state the number of hours for which Robbins was allegedly undercompensated; 3) failure to state where the alleged FLSA violations occurred; and 4) failure to describe the class members' work or state the common attributes among them. *See id.* "Overall, the . . . Amended Complaint [did] not adequately put Defendant on notice of the characteristics of the members of the purported class." *Id.*

Robbins filed an amended complaint on September 5, 2017 (the "Second Amended Complaint"). Robbins amended the class definition to "consist of [XTO's] Lease Operators employed in the United States who (1) were classified as non-exempt; and (2) did not receive an overtime compensation for overtime work in one or more individual workweeks over the past three years." Second Am. Compl. ¶ 5. This definition "include[s], without limitation, such job titles as 'Lease Operator,' 'Pumper,' and all job titles performing similar duties." *Id.* The duties uniting the job titles at issue are "perform[ing] manual and technical labor at well sites to assist with oil and gas production." *Id.* ¶ 2. Robbins further alleges that XTO subjected class members to a common scheme to deprive them of compensation for overtime hours worked. *See, e.g., id.* ¶ 26. XTO allegedly threatened discipline if putative class members failed to meet minimum productivity requirements, thus causing them to work more than 40 hours per week on a regular basis, refused to approve or pay for all overtime hours worked, and instructed class members not to record all hours worked. *Id.* ¶¶ 20-22.

XTO moved to dismiss the Second Amended Complaint, arguing that Robbins failed to correct the deficiencies identified in the Lynn Order. Pursuant to Special Order 3-318, this case

was transferred from the docket of Chief Judge Barbara M.G. Lynn to the docket of this Court on March 9, 2018.

## II. LEGAL STANDARDS

### A. *The Rule 12(b)(6) Standard*

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2012). At the motion to dismiss stage, the court does not evaluate the

plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### B. *Dismissing Class Allegations*

As noted in the Lynn Order, courts disagree about whether a plaintiff must plead facts to support the propriety of a collective action in order to survive a motion to dismiss. "A minority of courts have held that a motion to dismiss is an inappropriate place to challenge the sufficiency of class allegations when the plaintiffs have not yet moved for conditional certification." *Huchingson v. Rao*, CV No. 5:14-CV-1118, 2015 WL 1655113, at *3 (W.D. Tex. Apr. 14, 2015) (citations omitted). However, courts in this district generally have adhered to the majority approach and have held that the complaint must give the defendant fair notice of the putative class. *See, e.g., Flores v. Act Event Servs., Inc.*, 55 F. Supp. 3d 928, 940 (N.D. Tex. 2014). This inquiry is much different than the inquiry at the class certification stage. *See Huchingson*, 2015 WL 1655113, at *3. This Court adopts the majority approach and requires that "at the pleading stage, plaintiffs asserting FLSA collective actions must make plausible allegations that there are similarly situated employees with certain common alleged attributes that could support a collective action." *Ecoquij-Tzep v. Hawaiian Grill*, No. 3:16-CV-0625-M, 2016 WL 3745685, at *5 (N.D. Tex. July 12, 2016) (citation omitted).

### III. ANALYSIS

As discussed above, the Lynn Order identified four issues with the Amended Complaint. The Court will discuss each issue in turn.

First, Robbins's allegations in the Amended Complaint did not cite the date range when he worked for XTO. Second, Robbins did not state the number of hours for which he was allegedly undercompensated. In the Second Amended Complaint, Robbins clarifies that he worked for XTO

from May 2012 to September 2014. Second Am. Compl. ¶ 4. He also alleges that he worked "approximately 45 to 60 hours per workweek" during the May 2012 to September 2014 timeframe. *Id.* ¶ 15. Thus, the Court holds that Robbins has cured the first two pleading deficiencies identified in the Lynn Order. *See Jones v. Warren Unilube, Inc.*, No. 5:16-CV-264-DAE, 2016 WL 4586044, at *2 (W.D. Tex. Sept. 1, 2016) (denying motion to dismiss individual FLSA claim where plaintiff alleged that she worked "an average of 60 to 70 hours per week for the duration of her employment").

Third, Robbins failed to state where the alleged FLSA violations occurred. He has not cured that issue in the Second Amended Complaint but instead has chosen to focus on pleading the existence of a companywide scheme to ensure that Robbins and potential class members worked overtime hours without proper compensation. Thus, Robbins failed to correct the third pleading deficiency identified in the Lynn Order.

Fourth, the Amended Complaint did not describe the putative class members' work or state the common attributes among them. In the Second Amended Complaint, Robbins clarifies that all class members shared common duties because their core responsibility is performing manual and technical labor at well sites. Second Am. Compl. ¶ 2. Robbins also specifies that potential class members are classified as non-exempt and did not receive overtime compensation for at least one workweek in the three-year period preceding the filing of the lawsuit. *Id.* ¶ 5. Further, Robbins gives two examples of job titles included in the class: Lease Operator and Pumper. *Id.* Finally, Robbins discusses at length the common "illegal pay provisions" to which he and other potential class members were subjected. *Id.* ¶ 27; *see also id.* ¶¶ 17-26. According to Robbins, the failure to limit the class by geography, job title, or duties is irrelevant because "differences in job duties

and job titles only become relevant in cases involving salaried employees asserting misclassification claims." Pl.'s Br. 4.

Under *Ecoquij-Tzep*, this issue is the crux of the analysis at the motion to dismiss stage, as it determines whether Robbins has plausibly alleged that "there are similarly situated employees with certain common alleged attributes that could support a collective action." 2016 WL 3745685, at *5. Robbins's argument that job duties and job titles are irrelevant misses the mark, not only because it ignores the explicit instructions in the Lynn Order, but also because it relies on non-binding precedent and mischaracterizes the import of cases within the Fifth Circuit. First, Robbins failed to cite a single case dealing with a motion to dismiss. As XTO points out, Robbins "relies . . . on inapposite decisions granting conditional certification motions." Def.'s Reply 6. As noted above, the inquiry at the motion to dismiss stage is different from the one at the conditional certification stage. At the motion to dismiss stage, courts ask whether the defendant has fair notice of the putative class. *See Ecoquij-Tzep*, 2016 WL 3745685, at *5. The focus is on whether the collective action allegations are "descriptive enough to give rise to a plausible right to relief." *Creech v. Holiday CVS, LLC*, Civ. A. No. 11-46-BAJ-DLD, 2012 WL 4483384, at *3 (M.D. La. Sept. 28, 2012).

For example, in one case cited by Robbins, the court granted class certification to mining employees who were required to work through meal breaks because "it appear[ed] from the record . . . that the employees' job classifications, descriptions, or duties do not affect any of the facts that are material to plaintiffs' claim." *Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 522 (N.D. Tex. 2014); *see also Nguyen v. Versacom, LLC*, Civ. A. No. 3:13-CV-4689-D, 2015 WL 1400564, at *7 (N.D. Tex. Mar. 27, 2015) (finding different job classifications and responsibilities not materially relevant at first stage of certification process based on "the record developed thus

far"). At the motion to dismiss stage, the Court and XTO have less of a record from which to draw information and must rely heavily on Robbins's pleadings. Because the Court cannot determine who the potential class members are from the pleadings, it cannot determine whether differences in job titles and/or job duties are relevant to the claims.

Even ignoring the differences in procedural posture, all of the cases Robbins cites undermine his argument because they involve more detailed class descriptions. The *Behnken* class consisted of employees who were subject to the same Shift Agreement, paid on an hourly basis, non-exempt, employed in the same mining facility, *and* subject to the same mealtime practice. 997 F. Supp. 2d at 522. In *Nguyen*, the class members "all had the same general job responsibilities," were paid on an hourly basis, and were non-exempt employees. 2015 WL 1400564, at *7. Further, there were only two job titles included in the class. *Id.* Similarly, in *Aguilar v. Complete Landsculpture, Inc.*, the court granted conditional certification not only because the potential class members were paid according to a "block rate" scheme,[1] but also because they performed "similar job duties in the form of manual labor that consisted of planting trees and turf, installing sprinklers, cutting and placing patio stones, mowing and edging lawns, operating weed eaters and leaf blowers, trimming plants[,] and planting flowers." No. Civ. A. 3:04-CV-0776-D, 2004 WL 2293842, at *2 (N.D. Tex. Oct. 7, 2004). Further, there were only two job titles included in the class. *Id.* at *4. These class allegations, in addition to those in all of the cases cited by Robbins, are narrower and more descriptive than Robbins's allegations.

Robbins alleges only that the potential class members are or were non-exempt employees who are or were responsible for performing manual and technical labor at well sites and subject to

---

[1] The block rate allegation also served to narrow the class to hourly employees only. *See Aguilar*, 2004 WL 2293842, at *2.

a companywide policy that deprived them of overtime pay. This description is comparable to the ones found inadequate in *Flores* and *Creech*. The *Flores* court granted the defendant's motion to dismiss where the putative class consisted of all current and former workers nationwide who are or were subject to the defendant's unlawful pay practices and policies. 55 F. Supp. 3d at 940. Although Robbins's class definition is marginally more specific, defining a class as all employees performing manual and technical labor does very little to restrict the scope of potential class members or to give XTO fair notice of which employees may be included in the class. As in *Flores*, Robbins failed to use his own job duties "to assist in defining a more specific putative class." 55 F. Supp. 3d at 940.

The *Creech* court granted the defendant's motion to dismiss where the putative class consisted of shift supervisors nationwide who provided customer service, were subject to the same pay provisions, and were not compensated for overtime hours worked. 2012 WL 4483384, at *1, *3. The *Creech* court found the allegations that the potential class members all provided customer service insufficiently descriptive to give rise to a plausible right to relief. *Id.* at *3. Similarly, this Court finds the allegation that all potential class members performed manual or technical labor, without more details about job titles or specific duties, insufficiently descriptive. Moreover, the *Creech* court took issue with the pay provisions allegations because the plaintiff did not indicate "whether other class members are also wage-and-hour employees or are paid a salary." 2012 WL 4483384, at *3. Similarly, this Court takes issue with Robbins's failure to limit the class to either hourly or salaried employees. *See also Behnken*, 997 F. Supp. 2d at 521 (noting that "each [class member] has been paid on an hourly basis").

While Robbins did not move for leave to amend in his response brief, the Court chooses to consider the matter *sua sponte*. *See, e.g., Flores*, 55 F. Supp. 3d at 940-41 (granting leave to amend

8

*sua sponte*). Rule 15 instructs the Court to "freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). The Supreme Court has laid out factors to consider when deciding whether to grant leave to amend:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Although Robbins did not seek leave to amend here, the Court believes the *Foman* factors still apply.

The Court concludes that Robbins should be granted leave to amend his collective action claims. While the Second Amended Complaint failed to address certain deficiencies identified in the Lynn Order, Robbins has only filed two amendments. The case has been pending for two years, but, to the Court's knowledge, no discovery has taken place. Thus, the prejudicial effect on XTO will be limited. Finally, the Court does not believe amendment to be futile, as Robbins is now on notice that he will not be permitted to rely on a systematic scheme to plead a collective action. Although the Court grants leave to amend, its decision on this motion to dismiss should serve as due notice to Robbins's attorneys to plead a plausible FLSA collective action.

## IV. CONCLUSION

For the foregoing reasons, the Court grants XTO's motion to dismiss. On its own motion, the Court grants leave to amend the complaint. Robbins must file a third amended complaint no later than July 9, 2018. If a third amended complaint is not filed by this date, only Robbins's individual claims will remain pending before the Court.

**SO ORDERED.**

SIGNED June 26, 2018.

*/s/ Karen Gren Scholer*
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**